Filed 5/6/21  Hamilton v. Van Wert CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICK HAMILTON et al., | F078345 |
| Plaintiffs, Cross-defendants and Respondents, | (Madera Super. Ct. No. MCV073141) |
| v. | |
| ROGER VAN WERT et al., | **OPINION** |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from an order of the Superior Court of Madera County.  James E. Oakley, Judge.

Gavrilov & Brooks, Safarian Choi & Bolstad, and Bradley E. Jewett; Jeffer Mangels Butler & Mitchell and Matthew D. Hinks for Defendants, Cross-complainants, and Appellants.

Whelan Law Group, Walter W. Whelan and Lucas Whelan for Plaintiffs, Cross-defendants, and Respondents.

-ooOoo-

Plaintiffs, cross-defendants and respondents ("plaintiffs" or "Tooms") sued defendants, cross-complainants, and appellants ("defendants" or "Van Werts") for renting out a residence they owned on a short-term basis.[1]  Plaintiffs alleged defendants' conduct violated the "Declaration of Restrictions" applicable to the residence.  Plaintiffs obtained a preliminary injunction prohibiting defendants from engaging in short-term rentals.  The Declaration of Restrictions were subsequently amended to expressly prohibit short-term rentals.  Defendants indicated that they would not engage in short-term rentals as long as they were prohibited under the Declaration of Restrictions.

At trial, defendants prevailed, and the court entered judgment in their favor.  Defendants sought costs under Code of Civil Procedure section 1032, and attorney fees under Civil Code section 1717,[2] among other authorities.  The court denied costs and attorney fees to defendants, and they appeal.  For the reasons explained below, we reverse.

## FACTS

Plaintiffs Eric and Kathy Tooms own a residential property in the Cascadel Heights subdivision in North Fork, California, as do defendants Roger Van Wert and Cristina Van Wert.  The Van Wert's property is subject to a Declaration of Restrictions dated February 16, 1990.  Section two of the Declaration of Restrictions, entitled "Land Use," originally provided:  "Use of each parcel shall comply with applicable county zoning ordinances and the CC&R's contained herein."  The Declaration of Restrictions

---

[1] Rick and Kris Hamilton also owned a property at Cascadel Heights and were plaintiffs below.  The Hamiltons are not parties to this appeal.

Aline and David Iden also resided in Cascadel Heights. Edward and Jane Freutel owned a portion of the Van Wert property.  The Idens and Freutals were defendants below but are not parties to this appeal.

[2] All further statutory references are to the Civil Code unless otherwise noted.

2.

also provided that the prevailing party in any enforcement litigation would be entitled to all expenses and costs, including attorney fees.

The Van Wert property is zoned "RRS-5." Permitted uses of property in the RRS-5 zone included "[o]ne single family dwelling in permanent structure…"

By the end of May 2016, the Van Werts had begun renting out their property on a short-term basis.

*Plaintiffs Initiate Lawsuit*

On November 9, 2016, the Tooms (plaintiffs) sued the Van Werts (defendants) and others, alleging that they were wrongfully operating their residence as a short-term vacation rental enterprise in violation of the Declaration of Restrictions. They alleged that the Declaration of Restrictions required compliance with applicable county ordinances, and that the Madera County Code prohibited the type of short-term rentals defendants had engaged in at their property. As plaintiffs, the Tooms sought monetary damages and injunctive relief against the Van Wert defendants.

*Preliminary Injunction; "Lodging House" Issue; and Cessation of Short-term Rentals by Defendants*

Plaintiffs filed a motion for a preliminary injunction. In briefing on the motion, plaintiffs argued that the Madera County Code did not permit properties zoned RRS-5, such as the Van Wert property, to be used as a "lodging house." A lodging house was defined by section 18.04.300 of the County Code as "a building where lodging only is provided for compensation and having not more than six sleeping rooms for this purpose."

An e-mail dated March 6, 2017, was later admitted at trial, and it indicated that Matthew Treber with Madera County Planning Department was going to have a conference call the next day with Roger Van Wert and his attorney. An invoice from defense counsel's firm contains an entry for March 7, 2017, with the following description: "Research Lodging House issue; Telephone conf. w/Madera Counsel re:

3.

litigation and lodging house issue." On March 7, 2017, an agenda item was submitted to the Madera County Board of Supervisors recommending several revisions to zoning ordinances. Among the recommended changes was deleting "lodging house" from Chapter 18.04.

In briefing on the preliminary injunction motion, defendants asserted that the Board of Supervisors had voted to eliminate certain references to "lodging house" in the County Code and that this development rendered one of plaintiffs' arguments moot.

The hearing on the motion for a preliminary injunction ultimately occurred on April 7, 2017. The minute order for the hearing reflects that the court was "inclined" to grant the preliminary injunction.

The last short-term rental of the Van Wert property ended on April 9, 2017.

In an order dated April 25, 2017, the court issued a preliminary injunction enjoining the Van Werts from renting their property on a short-term basis "during the pendency of this lawsuit."

*Amendment of the Declaration of Restrictions*

On May 24, 2017, residents of Cascadel Heights voted to amend section 2 of the Declaration of Restrictions to read:

> "Use of each parcel shall comply with applicable county zoning ordinances and these conditions, covenants and restrictions, except that, to the extent county ordinances now or in the future are interpreted to permit the parcels or portions of the parcels or residences on the parcels to be rented as short-term rentals of 30 days or less, such short-term rentals for 30 days or less are hereby declared to be prohibited."

Plaintiffs assert they persuaded the residents to vote to amend the Declaration of Restrictions.

*Supplemental Complaint*

On June 27, 2017, plaintiffs filed a supplemental complaint.[3]  The supplemental complaint included allegations concerning events that had transpired after the filing of the original complaint – primarily focused on the May 2017 amendment of the Declaration of Restrictions.

*County Ordinance No. 525VV*

On July 18, 2017, the Madera County Board of Supervisors passed Ordinance No. 525VV, which expressly permitted the rental of a single family dwelling "regardless of the tenure or length of tenancy" in all residential zone districts.  An Agenda Item Submittal report accompanying the ordinance stated that it was not a change in residential use policy, but rather a clarification of the County's longstanding interpretation of existing ordinances.

*Motion to Terminate Preliminary Injunction*

On September 7, 2017, the Van Werts moved to terminate the preliminary injunction based on the enactment of ordinance No. 525VV.  They argued that the ordinance permits what the court had previously enjoined.

*First Amended Cross-complaint*

On August 4, 2017, defendants filed a first amended cross-complaint against plaintiffs ("the cross-complaint").  The cross-complaint alleged plaintiffs were attempting to enforce an improper and unlawful interpretation of the original and amended Declaration of Restrictions.  The cross-complaint sought declaratory relief establishing

---

[3] The supplemental complaint contained in appellant's appendix does not have a file-stamp.  We were able to ascertain the filing date elsewhere in the record.  However, the lack of a file-stamp indicates that the supplemental complaint at Tab 5 of appellant's appendix is not an "accurate cop[y] of the document[] *in the superior court file*."  (Cal. Rules of Court, rule 8.124(g), italics added.)

the parties' respective rights and obligations under the pre- and post-amendment Declaration of Restrictions.

In the cross-complaint, defendants said they did not allow short-term rentals once the Declaration of Restrictions was amended, and that they would not engage in any further short-term rentals unless the amended Declaration of Restrictions was revised.

*Trial Testimony*

Roger Van Wert testified that in the summer of 2016 his brother-in-law, Tim Madden, was managing the Van Wert property. Tim's wife, Susan, organized a yoga retreat at the Van Wert property scheduled for September 2 through 5, 2016. Another "annual women's weekend" was planned for September 1 through 4, 2017. As of March 17, 2017, Roger anticipated that the event would occur annually for as long as Susan chose to organize it. However, in August 2017, Roger told Susan to cancel her plans for the retreat. When asked if he cancelled the event because of the preliminary injunction, Roger said the way he would "put it" is that he "didn't want to approach the line" of impropriety. Later, Roger said he thought it was prudent to cancel the event given the lawsuit and the change to the CC&Rs, among other considerations.

Defendants testified at trial that they no longer had any intention of renting their properties on a short-term basis so long as the governing Declarations of Restrictions prohibit short-term rentals. No evidence contradicting this claim was adduced at trial.

*Motion for Judgment*

At the conclusion of plaintiff's case, the Van Werts made an oral motion for a defense judgment. (See Code Civ. Proc., § 631.8.) During argument on the motion, defense counsel said Roger initially intended to allow the women's retreat to proceed but changed his mind once the CC&Rs were amended. The court tentatively granted the motion.

6.

*Statement of Decision*

In a statement of decision dated April 2, 2018, the court issued its written ruling.[4] The court described its view of the "principal issues in dispute" to be "whether the use by the … Van Wert Defendants of their … propert[y] … for short-term rentals amounted to a breach of the Declaration of the Restrictions governing the properties and whether [plaintiffs] are entitled to compensatory damages and/or injunctive relief on account of such alleged breaches." Later, the court said that, "[m]ore generally, the principal issue in dispute was whether short-term rentals were prohibited in the Cascadel Heights neighborhood" by the Declaration of Restrictions.

Later in the statement of decision, the court held that plaintiffs had failed to establish damages, such as diminution of value or the properties or loss of use and enjoyment of their properties. Without quantifiable damages, only plaintiffs' request for injunctive relief remained. Such relief was also precluded, because plaintiffs did not establish that defendants' conduct was likely to continue without injunctive relief.

Consequently, the court directed entry of judgment in favor of defendants and against plaintiffs on all causes of action and provided that plaintiffs "shall take nothing by reason of the allegations" of their complaint.[5] The court reserved jurisdiction over the issue of which party was the prevailing party "to be determined upon the motion of a party for an award of attorneys' fees and/or costs."

*Judgment*

The written judgment issued April 2, 2018, stated "Judgment is entered in favor of the Van Wert Defendants … on all causes of action alleged in the Supplemental Complaint for the reasons set forth in the Statement of Decision, filed herewith."

---

[4] Defendants prepared the proposed statement of decision.

[5] The court also dismissed defendants' cross-complaint as moot.

*Postjudgment Proceedings*

On April 23, 2018, defendants filed a memorandum of costs. Plaintiffs subsequently filed a motion to tax defendants' costs.

On May 30, 2018, defendants filed a motion for attorney fees, contending that they were the prevailing parties.

On July 31, 2018, the court issued an order denying attorney fees. The court concluded that plaintiffs could "claim success in the litigation" because they obtained a temporary injunction, caused amended CC&Rs to be enacted, and defendants "have made it clear that they intend to comply with the amended CC&Rs." The court also concluded that defendants could also "claim success in the litigation" because plaintiffs did not obtain money damages or a permanent injunction. Consequently, the court concluded that under section 1717, subdivision (b)(1), neither party prevailed on the contract. The court denied both parties' requests for attorney fees.

In the same order, the court also denied recovery of costs to defendants under Code of Civil Procedure section 1032.

It is from this order that the Van Wert's appeal.

## DISCUSSION

### I. The Trial Court Erred in Denying Attorney Fees to Defendants Under Section 1717

Section 1717 governs the award of attorney fees in "any action on a contract." (§ 1717, subd. (a).) A " '[p]rovision for attorney fees in a declaration of restrictions constituting a binding equitable servitude is a "contract" within the meaning of … section 1717.' " (*Huntington Landmark Adult Community Assn. v. Ross* (1989) 213 Cal.App.3d

8.

1012, 1024; see *Mackinder v. OSCA Development Co.* (1984) 151 Cal.App.3d 728, 738–739.) Therefore, section 1717 applies here.[6]

That statute provides that the "prevailing party" in an action on a contract is "entitled" to attorney fees. (§ 1717, subd. (a).) The statute defines the prevailing party as "the party who recovered a greater relief in the action on the contract." (*Id.*, subd. (b)(1).) However, the statute also provides that the "court may also determine that there is no party prevailing on the contract …." (*Ibid.*)

These provisions raise an important question. How can the statutory language "stating that a party prevailing on the contract 'shall be entitled' to an award of attorney fees, be reconciled with the provision giving the trial court discretion to determine that there is no prevailing party?" The Supreme Court answered that question in *Hsu v. Abbara* (1995) 9 Cal.4th 863, 872 (*Hsu*).

"[T]ypically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought. [Citation.]" (*Hsu*, *supra*, 9 Cal.4th at p. 875.) In that circumstance, the court exercises its discretion, guided by equitable considerations, to determine litigation success. (*Id.* at p. 877.) However, when the judgment is a simple, unqualified win for one party over another, the winning party is entitled to attorney fees as a matter of law, and the trial court has "no discretion" to deny the fees. (*Id.* at p. 876.) In other words, "when the results of the litigation on the contract claims are *not* mixed – that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other – the Courts of Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant." (*Id.* at pp. 875–876.)

---

[6] For this reason, we apply section 1717 and not Code of Civil Procedure section 1032. (See *Foothill Properties v. Lyon/Copley Corona Associates* (1996) 46 Cal.App.4th 1542, 1554.)

In determining whether there is a prevailing party, " 'the trial court is to compare the *relief awarded* on the contract claim … with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources.' " (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 974, italics added (*DisputeSuite.com*).) By definition, this comparison can only be made upon final resolution of the contract claims. (*Ibid.*)

To the extent defendants' challenge raises issues of law, we consider them de novo. (*Burkhalter Kessler Clement & George LLP v. Hamilton* (2018) 19 Cal.App.5th 38, 43.) For example, to the extent our review requires construction of section 1717, we do so de novo. (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 440, fn. 2.) If section 1717 conferred discretion to the trial court to determine which party prevailed in this case, we review that determination for abuse of discretion. (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894.)

*Judgment Handed Defendants a Simple, Unqualified Win*

Here, the judgment was a simple, unqualified win for the defendants. The judgment provided as follows: "Judgment is entered in favor of the Van Wert Defendants … on all causes of action alleged in the Supplemental Complaint for the reasons set forth in the Statement of Decision, filed herewith." The Statement of Decision provided that judgment "shall be entered in favor of the … Van Wert Defendants and against Plaintiffs on all causes of action alleged in the first Supplemental Complaint. Plaintiffs shall take nothing by reason of the allegations of the First Supplemental Complaint."

Thus, the plaintiffs' "action on [the] contract" (§ 1717, subd. (a)) concluded with what is colloquially referred to as a complete "defense judgment." The judgment provided plaintiffs absolutely no relief – including no monetary damages, or injunctive relief. In other words, the judgment clearly reflects a simple, unqualified win for defendants. Indeed, case law is clear that "when a defendant defeats recovery by the

10.

plaintiff … the defendant is the party prevailing … under section 1717 *as a matter of law*. [Citations.]" (*Hsu*, *supra*, 9 Cal.4th at p. 876, italics added.)  That is, a judgment reflects a "simple unqualified win" for the defendant if he or she "prevailed on all causes of action.  [Citation.]" (*Foothill Properties v. Lyon/Copley Corona Associates*, *supra*, 46 Cal.App.4th at p. 1554.)  This rule applies even where the defendant was found to have been in breach, but nonetheless obtains favorable judgment because the plaintiff fails to prove damages.  (*Id.* at p. 1555.)

Because defendants "successfully defended the only contract claim in their litigation … [they] were, as a matter of law, the parties prevailing on the contract." (*Hsu* at p. 877.)

Plaintiffs resist this straightforward conclusion by arguing that they achieved their litigation objectives through the preliminary injunction and by obtaining defendants' trial testimony that they will no longer rent their property on a short-term basis.  However, as explained below, neither consideration undermines the fact that the judgment was an unqualified win for defendants.

*Preliminary Injunction*

Plaintiffs note the court granted their motion for a preliminary injunction.

Section 1717's "phrase 'prevailing *on the contract*' … implies a strategic victory at the end of the day, not a tactical victory in a preliminary engagement." (*Estate of Drummond* (2007) 149 Cal.App.4th 46, 51.)  Thus "fees under section 1717 are awarded to the party who prevailed on the contract *overall* ...." (*DisputeSuite.com*, *supra*, 2 Cal.5th at p. 977, italics added.)  In contrast, interim victories do not confer prevailing party status because, by definition, they are not "dispositive" of the contractual dispute. (*Id.* at p. 981; see also *Estate of Drummond*, at p. 51.)  Indeed, when a party "prevail[s] only on an interim motion that did not resolve the parties' contract dispute," it still "remains to be seen" whether that party "will ultimately be the overall victor." (*DisputeSuite.com*, at p. 977; see also *Liu v. Moore* (1999) 69 Cal.App.4th 745, 755.)

11.

We conclude the granting of a preliminary injunction in the present case was not a "final resolution" of the contract claims, and therefore plays no role in determining who *prevailed* "on the contract." (§ 1717, subd. (a).) " 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, *pending a trial on the merits*, the defendant should or … should not be restrained from exercising the right claimed by him.' [Citations.]" (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528, italics added.) While the court concluded here that the balance of the equities warranted a *preliminary* injunction *pending final resolution of the action*, it subsequently ruled at the conclusion of the action that a permanent injunction was not appropriate.[7] It is this latter determination that controls, because the question is who prevailed "on the contract" – a determination to be made " 'only upon *final resolution* of the contract claims ….' " (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1097, italics added; see also *Roberts v. Packard, Packard & Johnson* (2013) 217 Cal.App.4th 822, 831.) Interim victories do not confer prevailing party status. (*DisputeSuite.com*, *supra*, 2 Cal.5th at p. 977.)[8]

---

[7] And the preliminary injunction terminated on its terms because it only applied "during the pendency of [the] lawsuit."

[8] Plaintiffs seek to distinguish the present case from this principle set forth in *DisputeSuite.com*. They contend that *DisputeSuite.com* concerned a "procedural victory" while the preliminary injunction in this case "addressed a substantive issue." However, the important distinction in *DisputeSuite.com* was not between procedural vs. substantive victories, but rather between interim versus dispositive victories. (*DisputeSuite.com*, *supra*, 2 Cal.5th at p. 981 ["The flaw in [respondent's] claim to be the prevailing party here is *not that its victory ... was procedural* but that it was *not dispositive* of the contractual dispute." (Italics added.)].)

*Defendants' Testimony*

Plaintiffs also point to defendants' testimony at trial that they would no longer engage in short-term rentals.[9] That testimony, plaintiffs contend, accomplished a litigation objective. It may be that defendants' testimony proves helpful to plaintiffs in some way. But that does not change the fact that "the *judgment* was a 'simple, unqualified win' " for the defendants. (*Hsu*, *supra*, 9 Cal.4th at p. 876, italics added.)

Even assuming that obtaining defendant's testimony under oath was one of plaintiff's litigation objectives, it would not alter our conclusion. Courts evaluate the plaintiff's litigation objectives, *in order to compare it to* the "relief awarded on the contract claim." (*Hsu*, *supra*, 9 Cal.4th at p. 876.) Defendants' testimony, while arguably helpful to plaintiffs, does not constitute "relief awarded."[10]

---

[9] Roger's testimony was not as clear cut as plaintiffs or the Statement of Decision describe it. In a request for supplemental briefing, this court asked plaintiffs to cite to specific testimony defendants gave to the effect they would never engage in short-term rentals absent a change to the Declaration of Restrictions. In response, plaintiffs cited to Roger's testimony about cancelling a specific event: the yoga/women's retreat. In that testimony, Roger indicated the change to the Declaration of Restrictions played a role in his decision to cancel the yoga/women's retreat. Defense counsel made a similar statement regarding the yoga/women's retreat during argument on the motion for judgment. However, these statements are different from a broad, forward-looking promise not to engage in short-term rentals absent amendment of the Declaration of Restrictions.

However, for the reasons explained herein, we conclude that even if Roger's testimony could be interpreted in the fashion suggested by plaintiffs and the Statement of Decision, it would not undermine defendants' simple, unqualified win.

[10] Plaintiffs also suggest that they "won" because the Statement of Decision said they successfully made a *prima facie* case that defendants were in violation of a prohibition on short-term rentals even before the Declaration of Restrictions was amended on May 24, 2017. Plaintiffs contend that they kept litigating the proper interpretation of the original ordinances, and the trial court ultimately agreed with their position. However, while the Statement of Decision agreed with plaintiffs' interpretation, it ultimately concluded that plaintiffs had not established damages or entitlement to injunctive relief and, therefore, were to "take nothing by reason of the allegations of the First Supplemental Complaint." A judgment reflects a simple, unqualified win for the

13.

The "unqualified win" rule from *Hsu* arises from the Legislature's intent "that a party prevailing on a contract receive attorney fees *as a matter of right* (and that the trial court is therefore *obligated* to award attorney fees) whenever the statutory conditions have been satisfied." (*Hsu*, *supra*, 9 Cal.4th at pp. 872, 876.) We are doubtful that the enacting Legislature would have wanted this intent derailed whenever testimony adduced at trial was favorable to the losing party.

Plaintiffs note that even after they obtained the preliminary injunction, the defendants insisted that they had the correct interpretation of existing land use ordinances. But this fact undermines plaintiffs' position. It underscores *why* plaintiffs persisted in seeking the relief they ultimately *failed* to obtain.

*Plaintiffs' Litigation Objectives Compared to Relief Awarded*

Even if we momentarily assumed defendants had not achieved a simple, unqualified win, plaintiffs' position would still lack merit.

"[A] party who is denied direct relief on a claim may nonetheless be found to be a prevailing party *if it is clear that the party has otherwise achieved its main litigation objective*. [Citations.]" (*Hsu*, *supra*, 9 Cal.4th at p. 877, italics added.) In *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, the Supreme Court stated, "[I]t is difficult to fathom why a plaintiff cannot be considered a prevailing or successful party when it achieves its litigation objectives by means of defendant's 'voluntary' change in conduct *in response to the litigation.*" (*Id*. at p. 572, italics added.) Thus, assuming a "catalyst" theory applies in the present context, there still "must be some causal connection between the lawsuit and a change in the defendant's conduct …." (*Urbaniak v. Newton* (1993) 19 Cal.App.4th 1837, 1842.) Here, however, the defendants' position was that they would

---

defendant if the plaintiff obtains no affirmative relief, *even if the court concludes the defendant was in breach*. (See *Foothill Properties v. Lyon/Copley Corona Associates*, *supra*, 46 Cal.App.4th at pp. 1554–1555.)

not engage in short-term rentals *because of the amendment to the Declaration of Restrictions*, not the lawsuit.

Plaintiffs argue that they only sought amendment of the Declaration of Restrictions in response to defendants' "litigation tactic" of lobbying Madera County to amend its ordinances. However, lobbying for a change in the law is not "litigation." Nor is lobbying for a change in the Declaration of Restrictions. Moreover, amendment of the Declaration of Restrictions was not a "litigation objective" disclosed by the pleadings or similar papers. Thus, the fact that plaintiffs achieved an apparent victory *outside* of the litigation through amendment of the Declaration of Restrictions does not mean defendants did not obtain a simple, unqualified win *in* the litigation. Nor was it clearly established that the Declaration of Restrictions was amended *as a result of* the *lawsuit* (rather than as a result of the conflict underlying both the lawsuit and the amendment).[11] Indeed, by plaintiffs own account, they *persuaded* their neighbors to vote to amend the Declaration of Restrictions. Similarly, the trial court concluded that plaintiffs procured amendments to the Declaration of Restrictions "outside of this litigation."

Courts determine a party's litigation objective by looking at "the pleadings, trial briefs, opening statements, and similar sources." (*DisputeSuite.com*, *supra*, 2 Cal.5th at p. 974.) Plaintiffs' original and supplemental complaints sought a judgment for injunctive relief prohibiting defendants from operating a short-term vacation rental business. In appellate briefing, plaintiffs claim they had a broader litigation objective

---

[11] Plaintiffs cite defendants' trial brief, which stated that plaintiffs had "spearheaded" an effort to amend the Declaration of Restrictions. Plaintiffs also note that their attorney bills show they were spearheading and funding the effort to amend the Declaration of Restrictions. However, we have no quarrel with the notion that plaintiffs lobbied for amendment of the Declaration of Restrictions. Rather, we find unsupported plaintiff's claim that *the lawsuit* was the "catalyst that caused the neighborhood to adopt amended CC&Rs." To the extent plaintiffs are claiming that the amendment of the Declaration of Restrictions was a "litigation objective," we also find that contention unsupported.

15.

below: "stopping short-term rentals in the neighborhood." However, defendants' last short-term rental ended on April 9, 2017, and the preliminary injunction was issued April 25, 2017. Yet the plaintiffs filed their supplemental complaint (the operative pleading through trial) several months later, on June 27, 2017. Thus, plaintiffs' true *litigation* objective, *as disclosed by the pleadings*, was not to simply stop defendants' short-term rentals (which had already stopped by the time of the supplemental complaint) but to obtain an *injunction* conclusively prohibiting short-term rentals (which would ensure they did not resume). Plaintiffs ultimately failed to achieve this objective. While they did achieve an "interim victory" with the preliminary injunction, they did not ultimately prevail "on the contract." The judgment denied their request for injunctive relief, and the preliminary injunction dissolved upon conclusion of the lawsuit. Thus, it is not "clear" (*Hsu*, *supra*, 9 Cal.4th at p. 877) that plaintiffs achieved their main litigation objective.

Plaintiffs rely extensively on *Zuehlsdorf v. Simi Valley Unified School Dist.* (2007) 148 Cal.App.4th 249 (*Zuehlsdorf*) to argue that losing on the issue of permanent injunctive relief is not dispositive where the plaintiff nonetheless obtains his or her litigation objectives. However, *Zuehlsdorf* involved a different attorney fees statute: Government Code section 800. (*Id.* at p. 255.) Plaintiffs acknowledge the different statutes at issue but argue that "the prevailing party analysis is the same" as section 1717. However, *Zuehlsdorf* itself refutes that assertion:

> " 'The definition of prevailing party is not uniform under California law, and many attorney fees statutes contain a technical definition applicable to the particular statutory scheme.' [Citation.] [Government Code] [s]ection 800 does not contain such a definition. *Courts have rejected reliance on the definitions of a prevailing party found in ... section 1717 (contractual attorney fees) to determine what constitutes a prevailing party.* [Citation.]" (*Zuehlsdorf*, at p. 257, italics added.)

And, as noted above, the permanent injunction was unnecessary because defendants agreed to change their conduct *in response to the change in the Declaration of Restrictions* (rather than the lawsuit).

16.

*Even if they did not Achieve Simple, Unqualified Win, the Defendants Were Entitled to Attorney Fees as Prevailing Parties*

When neither party achieves a simple, unqualified win, the trial court has some discretion to determine whether there was a prevailing party. However, that discretion is not "unfettered." (*de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287, 1294.) A trial court may err when one party achieves a "lopsided" (though not unqualified) win over the other party yet fails to afford them prevailing party status. (*Id*. at p. 1295; see § 1717, subd. (b)(1) [prevailing party is "the party who recovered a greater relief …"].)

Even if plaintiffs' transitory victory in obtaining a preliminary injunction mars what would have otherwise been an unqualified victory for defendants, it still must be said that defendants achieved a lopsided victory. The plaintiffs' only litigation victory was the preliminary injunction. That victory dissolved when the preliminary injunction gave way to a judgment in which defendants completely prevailed. Thus, at a minimum, defendants achieved a "lopsided" victory entitling them to prevailing party status.

## II. Defendants are Entitled to Recover Costs

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not …." (*Id*., subd. (a)(4).)

Thus, if a party falls under one of the four categories identified in the first sentence of subdivision (a)(4), they are entitled to costs as a matter of right. (See *Childers v. Edwards* (1996) 48 Cal.App.4th 1544, 1549.) If neither party qualifies as a "prevailing

party" under the first sentence, then the second sentence applies, and the court has discretion to disallow costs. Defendants insist that since plaintiffs did not recover any "relief," they were the prevailing parties as a matter of law under the first sentence. As a result, the court had no discretion to deny costs. We agree.

The core issue is whether plaintiffs obtained or recovered any "relief." (Code Civ. Proc., § 1032, subd. (a)(4).) If not, then defendants are prevailing parties as a matter of law by virtue of the fact that plaintiffs did "not recover any relief against … defendant[s]." (*Ibid.*) And it is clear that the judgment (and the statement of decision) afforded plaintiffs no relief whatsoever.

Plaintiffs did obtain a preliminary injunction effective during the pendency of the suit. However, the definition of "prevailing party" under Code of Civil Procedure section 1032 centers around the ultimate disposition of lawsuit – whether by money judgment, dismissal or a defense judgment. (See Code Civ Proc., § 1032, subd. (a)(4).) A preliminary injunction is not such a disposition – it is a *temporary* preservation or alteration of the status quo *pending a determination on the merits*. Here, the ultimate determination on the merits was that the plaintiffs were entitled to no "relief" whatsoever.

This approach has the added benefit of being far more practical than evaluating each and every interim ruling throughout the life of a case. Does a favorable ruling on a discovery motion constitute "relief" under Code of Civil Procedure section 1032, subdivision (a)(4)? What about when the court sustains a demurrer, but the plaintiff successfully amends the complaint? Does the initial sustaining of the demurrer constitute "relief" for present purposes? Instead of parsing every interim ruling to ascertain the prevailing party, Code of Civil Procedure section 1032, subdivision (a)(4) focuses on the ultimate disposition of the case.

Here, the ultimate disposition of the case was that plaintiffs were entitled to no "relief" whatsoever. Therefore, defendants were prevailing party because "plaintiffs … [did] not recover any relief against … defendant[s]." (Code Civ Proc., § 1032,

subd. (a)(4).) This is not an "other than as specified" (*ibid.*) situation, and therefore the court was not empowered to disallow costs.[12]

## DISPOSITION

The order denying defendants' motion for the attorney fees and granting plaintiffs' motion to tax defendants' costs in their entirety is reversed. The matter is remanded, and the trial court is directed to calculate the amount of attorney fees to which defendants are entitled under section 1717, and the amount of costs to which defendants are entitled under Code of Civil Procedure section 1033.5. Thereafter, the court shall enter an order granting such fees and costs to defendants. Defendants shall recover costs on appeal.

POOCHIGIAN, J.

WE CONCUR:

HILL, P.J.

PEÑA, J.

---

[12] Because the trial court concluded defendants were not entitled to any costs, its order did not resolve plaintiffs request to tax merely some of the costs as nonallowable under Code of Civil Procedure section 1033.5. The court shall address those contentions on remand.